**130 Nev., Advance Opinion 36**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN SCHLEINING, A MARRIED
MAN; AND DECAL NEVADA, INC., AN
OREGON CORPORATION,
Appellants,
vs.
CAP ONE, INC., A NEVADA
CORPORATION; PERRY M. DI
LORETO, TRUSTEE OF THE PERRY
M. DI LORETO AND PATRICIA E. DI
LORETO FAMILY TRUST (U/T/D
10/16/81); ROGER B. PRIMM, TRUSTEE
OF THE ROGER B. PRIMM FAMILY
TRUST (U/T/D 1/30/90); AND
DAMONTE FAMILY LIMITED
PARTNERSHIP, A NEVADA LIMITED
PARTNERSHIP,
Respondents.

No. 57934

**FILED**

MAY 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment entered after a bench trial in a deficiency action. Second Judicial District Court, Washoe County; Jerome Polaha, Judge.

*Affirmed.*

Molof & Vohl and Lee Molof and Robert C. Vohl, Reno,
for Appellants.

McDonald Carano Wilson, LLP, and Paul J. Georgeson and Kerry S. Doyle, Reno,
for Respondents.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we consider the application of NRS 40.453 and NRS 107.095 in the context of a lender's claim for a deficiency judgment against a guarantor. First, we are asked to determine whether NRS 40.453, which generally prohibits borrowers and guarantors from contractually "waiv[ing] any right secured to th[at] person by the laws of this state," invalidates a guarantor's waiver of the statutory right to be mailed a notice of default. Because the Legislature afforded guarantors a statutory right to be mailed a notice of default in the same bill in which NRS 40.453 was enacted, we conclude that the Legislature intended for NRS 40.453 to invalidate a guarantor's purported waiver of the right to be mailed a notice of default.

We next consider whether the statute guaranteeing the right to be mailed a notice of default, NRS 107.095, requires strict or substantial compliance on the part of a lender, and if substantial compliance is sufficient, whether there was substantial compliance in this case. We conclude that substantial compliance can satisfy NRS 107.095's notice requirements, and, here, the district court did not abuse its discretion in concluding that the lender substantially complied with NRS

---

[1]The Honorable Mark R. Denton, District Judge in the Eighth Judicial District Court, was designated by the Governor to sit in place of the Honorable Ron Parraguirre, Justice, who voluntarily recused himself from participation in the decision of this matter. Nev. Const. art. 6, § 4.

107.095's notice requirement. Therefore, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

In 2007, while acting as a principal and sole owner of Decal Nevada, Inc., appellant John Schleining arranged for Decal's purchase of an undeveloped parcel of real property along the Truckee River in Reno, Nevada, to improve and later sell to a developer. In May 2007, Decal obtained a loan in the amount of $2.5 million from respondent lenders, whom we collectively refer to as Cap One, to help pay the purchase price for the property. The loan required repayment in full by December 2007 and was secured by a deed of trust on the property. Schleining signed a personal guaranty of the loan, which included a waiver of his right to receive notice of any default of the loan.

By late 2007, Decal had failed to secure a buyer to purchase the property, and Schleining personally sent a letter seeking an extension of the loan. When Cap One declined to extend the loan, Schleining made an offer to pay the December interest payment in exchange for a release of his personal guaranty. Cap One again declined the offer and refused to release him from his personal guaranty. Decal defaulted on the loan in December 2007, and on January 30, 2008, Cap One recorded a notice of default and election to sell. On February 9, 2008, Cap One mailed a copy of the notice of default to Decal at various addresses, including Decal's office in St. Helens, Oregon. At that time, Schleining and Decal shared the St. Helens, Oregon, address, but Schleining was working in a separate office in Medford, Oregon, with forwarding instructions for his mail. Cap One did not mail a separate copy of the notice of default to Schleining as guarantor, as set forth in NRS 107.095, to any address. The notice of

trustee's sale was also mailed to Decal and Schleining's St. Helens, Oregon, address, but again a copy was not separately mailed to Schleining. On June 11, 2008, a trustee's sale was held at which Cap One was the only bidder on the property, purchasing it for $100,000.

Cap One then filed a complaint seeking a deficiency judgment against Schleining as guarantor. Schleining raised Cap One's failure to mail the notice of default to him separately under NRS 107.095 as an affirmative defense in his answer and moved for summary judgment. In response, Cap One argued that Schleining expressly waived his right to receive a notice of default in his guaranty. The district court ruled that the waiver was invalid pursuant to NRS 40.453. The district court further determined that issues of material fact remained, and the case proceeded to trial.

At trial, Schleining testified that although he was not mailed a copy of the notice of default or notice of trustee's sale, he was nevertheless aware of the default and that Cap One would likely foreclose. He also acknowledged that he knew of the trustee's sale prior to its commencement. He testified that, upon learning of the pending trustee's sale, he made no effort to contact Cap One to attempt to prevent or delay the sale. Following the trial, the district court concluded that the notice requirements of NRS 107.095 could be satisfied by substantial compliance. Thus, because Schleining had actual notice of the default and foreclosure sale and was not prejudiced by the lack of formal notice, the district court held that Cap One had substantially complied with NRS 107.095. Accordingly, the district court awarded a deficiency judgment against Schleining in favor of Cap One, and Schleining appealed.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

## DISCUSSION

On appeal, Schleining asserts that the district court erred in concluding that strict compliance with NRS 107.095's notice of default provisions is not required and that, regardless, Cap One failed to afford him adequate notice under a substantial-compliance standard, such that he should be released from his obligation as guarantor. Cap One, on the other hand, disagrees and counters that these issues need not even be addressed because Schleining validly waived NRS 107.095 notice and, thus, the district court reached the right result.

### *Pursuant to NRS 40.453, Schleining could not waive the right to be mailed the notice of default*

Cap One argues that Schleining validly waived any right to notice of Decal's default. The district court, however, concluded that NRS 40.453 invalidated Schleining's waiver of his right to be mailed the notice of default. This court reviews determinations of statutory construction de novo. *Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. \_\_\_, \_\_\_, 265 P.3d 688, 690 (2011).

NRS 40.453(1) states as follows:

> It is hereby declared by the Legislature to be against public policy for *any document relating to* the sale of real property to contain any provision whereby a mortgagor *or* the grantor of a deed of trust or *a guarantor* or surety of the indebtedness secured thereby, *waives any right secured* to the person by the laws of this state.[2]

---

[2]NRS 40.453 expressly excludes any waivers allowed by NRS 40.495, but that exclusion is not at issue here.

SUPREME COURT
OF
NEVADA

(O) 1947A

(Emphases added.) Cap One argues that this court has already held that NRS 40.453 only applies to waivers of rights conferred in Nevada's antideficiency statutes, citing to *Lowe Enterprises Residential Partners v. Eighth Judicial District Court*, 118 Nev. 92, 102-04, 40 P.3d 405, 411-12 (2002), and that the right to notice of default is not one of those antideficiency rights to which the prohibition applies.[3] In *Lowe*, the real parties in interest argued that a waiver of their right to a jury trial in their loan documents and guaranty was invalid under NRS 40.453. 118 Nev. at 95, 40 P.3d at 407. This court disagreed, holding that the right to a jury trial did not fall under the scope of NRS 40.453. *Id.* at 104, 40 P.3d at 413. In doing so, this court first noted that NRS 40.453's plain language prohibited the waiver of "'any right secured to [the person] by the laws of this state.'" *Id.* at 102, 40 P.3d at 411 (quoting NRS 40.453 (1993)). We then recognized, however, that a literal application of this blanket prohibition would render unenforceable "such things as arbitration agreements, forum selection clauses and choice-of-law provisions." *Id.* at 102-03, 40 P.3d at 412 (footnotes omitted). Because of the potential for such absurd results, we determined that such a literal application of NRS 40.453 was not the Legislature's intent. We therefore

---

[3]Cap One also cites *McDonald v. D.P. Alexander & Las Vegas Boulevard, L.L.C.*, 121 Nev. 812, 123 P.3d 748 (2005), for the proposition that this court has already held that a guarantor may validly waive the right to be mailed a notice of default. But *McDonald* is inapposite, as this court did not address the validity of the waiver itself, much less the potential effect of NRS 40.453. Rather, we merely concluded that the applicability of an exception under NRS 40.430 (Nevada's one-action rule) did not depend on whether the guarantor waived notice under NRS 107.095. 121 Nev. at 818, 123 P.3d at 751-52.

concluded that NRS 40.453 was ambiguous, and we went on to determine the actual scope of NRS 40.453 through analysis of its legislative history. *Id.* at 102-03, 40 P.3d at 412. In concluding that NRS 40.453 does not apply to the right to a jury trial, this court stated that

> the comments solicited by the [L]egislature during the hearing on the amendment to NRS 40.453 highlight the intent of the [L]egislature to protect the rights created by Nevada's anti-deficiency legislation, not to protect the right to a jury trial. This conclusion is consistent with the fact that NRS 40.453 is codified in Chapter 40 of the Nevada Revised Statutes under the subheading "Foreclosure Sales and Deficiency Judgments."

*Id.* at 103-04, 40 P.3d at 412.

Cap One argues that *Lowe* restricts the scope of NRS 40.453 to the statutes dealing with deficiency judgments, NRS 40.451 through 40.459, which would preclude its application to NRS 107.095 in this case. While NRS 107.095 is not codified in the same subchapter that this court explicitly mentioned in *Lowe*, NRS 107.095 relates to the same subject matter and was enacted as part of the same bill that enacted NRS 40.453.[4] 1987 Nev. Stat., ch. 685, §§ 6, 8, at 1643-45. Additionally, the legislative hearing minutes that this court relied on in *Lowe* to determine the scope of NRS 40.453 included a discussion of the need to provide notice to guarantors in deficiency proceedings codified in NRS 107.080, which would later be separated into NRS 107.095, as part of that legislative

---

[4]When enacted in 1987, NRS 107.095 was codified as NRS 107.080(5). *See* 1987 Nev. Stat., ch. 685, § 8, at 1645 (enacting the majority of NRS 107.095's language in NRS 107.080(5)). A 1989 amendment separated that language into NRS 107.095. 1989 Nev. Stat., ch. 750, § 11, at 1770.

scheme. *See* Hearing on S.B. 359 Before the Assembly Judiciary Comm., 64th Leg. Ex. D (Nev., June 10, 1987) (Memorandum from Michael K. Wall, Deputy Supervising Staff Attorney, Nevada Supreme Court to Chief Justice E.M. Gunderson, Nevada Supreme Court (June 9, 1987)); *see also Lowe*, 118 Nev. at 103-04, 40 P.3d at 412 (concluding that the memorandum distributed at the hearing illustrated the intent of the Legislature in enacting NRS 40.453).

Unlike the right to a trial by jury, the statute providing for a guarantor's right to be mailed a notice of default was enacted together with NRS 40.453 and relates directly to the policy underlying the statutory scheme of which NRS 40.453 is a part. Therefore, we conclude that NRS 107.095 falls within the scope of NRS 40.453's prohibited waivers. Accordingly, the district court properly invalidated Schleining's waiver of his right to be mailed the notice of default, and we must go on to address Schleining's arguments concerning Cap One's compliance with NRS 107.095.[5]

*The district court did not abuse its discretion in determining that Cap One substantially complied with the notice requirement in NRS 107.095*

In determining whether strict or substantial compliance with a statute is required, "we examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical

---

[5]Cap One further argues that NRS 40.453 is inapplicable because it applies only to "'document[s] relating to the sale of real property'" and, according to Cap One, a guaranty agreement is not a document "'relating to the sale of real property.'" (quoting NRS 40.453). We reject this argument, as the plain language of NRS 40.453 explicitly applies to guarantors of notes secured by deeds of trust.

compliance with the statutory or rule language." *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1278 (2011). Here, we find it significant that at the time of the underlying events in this case, the Legislature had expressly imposed a substantial-compliance standard with regard to a lender's duty to provide a *borrower* with notice of a loan's default and the lender's election to foreclose. *See* NRS 107.080(5) (2007) (indicating that a trustee's sale may be declared void if, among other things, the entity conducting the sale "does not substantially comply with" the provisions of NRS 107.080).[6] In other words, the Legislature specifically envisioned that the purposes behind NRS 107.080's notice and timing requirements could be achieved even if these requirements were not strictly adhered to. *Cf. Leyva*, 127 Nev. at ___, 255 P.3d at 1278 (recognizing that strict compliance with a statute's requirements may not be necessary when strict compliance is not required to serve the statute's purpose). Given that the Legislature intended for a substantial-compliance standard to apply with regard to Cap One's duty to provide notice to Decal under NRS 107.080, we see no reason why the Legislature would intend for a strict-compliance standard to apply when providing the same notice directly to Schleining under NRS 107.095.

---

[6]We note that, in 2011, the Legislature added a new subsection to NRS 107.080. *See* 2011 Nev. Stat., ch. 81, § 9, at 335. This subsection, now NRS 107.080(7), sets forth specific penalties against an entity who "did not comply with" certain requirements in NRS 107.080. *See* NRS 107.080(7) (2011). Although the Legislature indicated that subsection 7's remedy "is in addition to the remedy provided in subsection 5," the Legislature did not change the substantial-compliance standard in subsection 5. Because the underlying events in this case took place before subsection 7's enactment, we need not consider what effect, if any, subsection 7 may have on subsection 5's substantial-compliance standard.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Moreover, this court has already addressed the applicability of substantial compliance in the context of notice requirements. In considering the notice requirements for mechanics' liens, this court held that substantial compliance is sufficient where actual notice occurs and there is no prejudice to the party entitled to notice. *Las Vegas Plywood & Lumber, Inc. v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982). Similar to the notice requirements for mechanics' liens discussed in *Las Vegas Plywood*, the purpose of NRS 107.095 is simply to notify the guarantor that the loan is in default and that the lender has elected to foreclose on the secured property. Thus, we conclude that the notice requirements of NRS 107.095 can be fulfilled through substantial compliance. We must now determine whether the district court properly concluded that there was substantial compliance in this case.

This court reviews substantial-compliance determinations for an abuse of discretion. *Redl v. Heller*, 120 Nev. 75, 81, 85 P.3d 797, 800-01 (2004); *Las Vegas Plywood*, 98 Nev. at 380, 649 P.2d at 1368. Applying the first prong of the rule articulated in *Las Vegas Plywood* to the facts of this case, we conclude that the district court properly found that Schleining had actual knowledge of the default and the pending foreclosure sale despite the lack of statutory notice. A review of the trial record clearly demonstrates that Schleining knew Decal would not be able to pay the loan when it became due. He first attempted to get an extension of the loan's due date, which Cap One rejected. Thereafter, he asked Cap One to release his personal guaranty in exchange for payment of one month's interest, which Cap One also rejected. Moreover, Schleining admitted at trial that he had actual knowledge of the default and the date of the foreclosure sale prior to its commencement.

Applying the second prong of the rule articulated in *Las Vegas Plywood*, we conclude that the district court properly determined that Schleining was not prejudiced by the lack of statutory notice. Although Schleining claimed that his failure to act to save the property at issue was because he did not receive the appropriate notice, there was no evidence presented that Schleining attempted to refinance the property but failed due to time constraints. Nor did Schleining testify about any additional actions he could have or would have taken to save the property and avoid a deficiency judgment if he had personally received the notice of default. Accordingly, and in light of the notice that Cap One sent to Decal at the address provided in Schleining's guaranty agreement, we conclude that the district court did not abuse its discretion in determining that Cap One substantially complied with the notice requirements of NRS 107.095.

Although the dissenting justices cite to the substantial-compliance rule, they refuse to apply the rule or review the discretion exercised by the district court. Instead, they conclude as a matter of law that substantial compliance did not occur, citing to *Las Vegas Convention & Visitors Authority v. Miller* for the proposition that the "failure to even attempt to comply with a statutory requirement will result in a lack of substantial compliance." 124 Nev. 669, 684, 191 P.3d 1138, 1148 (2008). However, this statement from *Las Vegas Convention* was not a holding of the court; rather, it was a comment on the fact that "typically" this court has found no substantial compliance when no attempt is made to comply with statutory requirements. *Id.* In fact, the court actually held that there was no substantial compliance with a ballot-initiative statute because the reasonable purpose of the statute was not met when the ballot-initiative proponents failed to include certain statutorily required

information on their affidavits *and* the proponents could not point to facts that would have otherwise demonstrated substantial compliance with the statute. *Id.* at 686, 191 P.3d at 1149.

In this regard, *Las Vegas Convention* was factually different from this case, as the purpose of the statute in that case was to prevent voter fraud, and the ballot initiative's proponents failed altogether to demonstrate that the statute's purpose had been achieved. *Id.* at 688-89, 191 P.3d at 1150-51. This is important because the purpose of the substantial-compliance rule is to identify a factual situation in a case whereby the reasonable purpose of the statute is met by the offending party's actions without requiring "technical compliance with the statutory . . . language." *See Leyva*, 127 Nev. at ___, 255 P.3d at 1278.

The dissent also argues that we have ignored *Las Vegas Convention*'s reliance upon *Schofield v. Copeland Lumber Yards, Inc.*, 101 Nev. 83, 692 P.2d 519 (1985). However, *Schofield* does not undermine our decision in this case. In *Schofield*, the lienholder gave notice of the lien but failed to include certain statutorily required information in the notice, namely the terms and conditions of the lienholder's contract. 101 Nev. at 84, 692 P.2d at 519-20. This court determined that without that information, the notice did not adequately advise the property owners about the contract's terms and "placed them at a considerable disadvantage in defending against the motion for summary judgment." *Id.* at 85, 692 P.2d at 520. Thus, this court concluded that there was no substantial compliance because the purposes of the statutory notice requirements were not fulfilled. *Id.* at 85-86, 692 P.2d 520-21.

We conclude that the district court did not abuse its discretion when it determined that Schleining's actual notice of the default and

foreclosure sale, coupled with the lack of prejudice, satisfied the purpose of NRS 107.095. Accordingly, we affirm the judgment of the district court.

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Saitta

_____, D.J.
Denton

DOUGLAS, J., with whom GIBBONS, C.J., and CHERRY, J., agree, concurring in part and dissenting in part:

While I concur with the majority's determination that a guarantor cannot waive the right to a notice of default, I dissent from the majority's application of substantial compliance to the notice requirement of NRS 107.095.

*Cap One did not substantially comply with NRS 107.095*

I agree that in determining whether strict or substantial compliance with a statute is required, "we examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical compliance with the statutory or rule language." *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1278 (2011) (citing *Leven v. Frey*, 123 Nev. 399, 407 n.27, 168 P.3d 712, 717-18 n.27 (2007)). In the context of notice requirements for mechanics' liens, this court has held that substantial compliance is sufficient where actual notice occurs and there is no prejudice to the party entitled to notice. *Las Vegas Plywood & Lumber, Inc. v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982). Thus, applying that standard here, the district court incorrectly held that Cap One substantially complied with NRS 107.095.

This court reviews substantial-compliance determinations for an abuse of discretion. *Redl v. Heller*, 120 Nev. 75, 81, 85 P.3d 797, 800-01 (2004). "Courts have defined substantial compliance as compliance with essential matters necessary to ensure that every reasonable objective of the statute is met." *Williams v. Clark Cnty. Dist. Attorney*, 118 Nev. 473, 480, 50 P.3d 536, 541 (2002). "[F]ailure to even attempt to comply with a statutory requirement will result in a lack of substantial compliance." *Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 684, 191 P.3d

1138, 1148 (2008); *Schofield v. Copeland Lumber Yards, Inc.*, 101 Nev. 83, 85, 692 P.2d 519, 520 (1985) ("[W]e do not think that a notice of lien may be so liberally construed as to condone the total elimination of a specific requirement of the statute.").

The majority notes that *Las Vegas Convention* involves substantial compliance in a factually different context, an election statute, but ignores this court's reliance on *Schofield* in reaching its conclusion. In *Schofield*, the failure to give notice of a lien as required in a mechanic's lien statute could not be satisfied without at least an attempt to comply with the statute. *Schofield*, 101 Nev. at 85, 692 P.2d at 520. The reasoning in *Schofield* and *Las Vegas Convention* that substantial compliance in the face of a failure to attempt compliance would negate the particular statutory provision in question is the better approach. *Schofield*, 101 Nev. at 85, 692 P.2d at 520; *Las Vegas Convention*, 124 Nev. at 686, 191 P.3d at 1149.

Here, Cap One concedes that it gave no notice to Schleining, either in a form required by NRS 107.095 and NRS 107.080 or otherwise.[1] Schleining conceded that he had become aware of the foreclosure sale two or three days prior, but neither Schleining nor Cap One alleges that it was Cap One who gave Schleining notice. Because Cap One took no action to give Schleining notice, Cap One's actions do not constitute "compliance with essential matters." *Williams*, 118 Nev. at 480, 50 P.3d at 541.

---

[1]The majority points out that Cap One mailed a notice of default to Decal Nevada and that Decal Nevada's address was identical to Schleining's address as listed in the written guaranty. This notice was not addressed to Schleining specifically, and Cap One does not argue that the notice mailed to Decal Nevada was also intended to provide notice to Schleining. Accordingly, this fact should not alter the conclusion that Cap One failed entirely to comply with the requirement to provide notice.

Furthermore, the rule articulated in *Las Vegas Plywood & Lumber v. D & D Enterprises*, 98 Nev. 378, 649 P.2d 1367 (1982), requires the court to review prejudice as to Schleining. The majority believes Schleining was not prejudiced; however, the district court, by finding that actual notice two or three days before the foreclosure sale was sufficient where the statute provides that such notice be effected over three months before the foreclosure sale, abused its discretion. Additionally, it must be noted that having two or three days to cure the $3 million default constitutes prejudice when Cap One took no action to give Schleining the required notice.

I dissent because I believe the test was not properly applied as to substantial compliance (notice and prejudice). I therefore, would reverse this judgement for failure to comply with NRS 107.095.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Cherry